JOHANNA GRIESS, APPELLANT, v. GIDEON J. GRIESS, APPELLEE.

71 N. W. 2d 513

Filed July 15, 1955. No. 33710.

*Massie & Bottorf* and *Perry, Perry & Nuernberger,* for appellant.

No appearance for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-PELL, WENKE, and BOSLAUGH, JJ., and FLORY, District Judge.

CHAPPELL, J.

Plaintiff, Johanna Griess, and defendant, Gideon J. Griess, who were married February 2, 1923, are the mother and father of 11 children. On September 21, 1953, plaintiff was granted a decree of absolute divorce from defendant because of extreme cruelty. At that time, the two oldest sons lived and worked away from home and were emancipated. The decree found and adjudged that plaintiff was a suitable person to have the custody, and she was awarded the custody of all other nine children. Three of them were sons, respectively 17, 13, and 5 years old. The other six were daughters, respectively 15, 12, 10, 9, 8, and 3 years old.

The parties, as joint tenants, owned 160 acres of described farm land in Clay County. Title to described 80 acres thereof, upon which was the residence and other farm buildings, was quieted in plaintiff. The crops then thereon were assigned to plaintiff. Title to the other described 80 acres, upon which were less valuable improvements, was quieted in defendant. The crops then thereon were assigned to defendant. The parties had also accumulated valuable personal property during the marriage. Except for particular items thereof, which were specifically assigned to each party, the decree gave plaintiff one-third and defendant two-thirds of the estate. In order to adjust the difference in values of the property awarded, plaintiff was allowed $1,521.06 as cash alimony. Defendant was also ordered to pay $60 per week as child support, payable to the clerk of the district court, beginning August 26, 1953, and thereafter on each Wednesday until further order of the court. Plaintiff was also awarded costs and $750 as attorney's fees, taxable as a part thereof.

Neither party ever appealed from such decree, thus it has become final and subject to modification only in the manner provided by sections 42-312 and 42-324, R. R. S. 1943.

On February 4, 1954, defendant was in default of child support payments, and plaintiff filed an application, in affidavit form, alleging that she was without funds with which to support the children; that although defendant was able to make the child support payments he had attempted to mortgage his property and avoid a lien thereon for such support; and that his failure to make the payments was willful, contumacious, and contemptuous. Plaintiff prayed that defendant should be cited to appear and show cause why he should not be held in contempt and why a receiver should not be appointed to take over and retain possession of all his property for the use and benefit of the children.

Thereafter, on March 5, 1954, defendant filed what he designated as a "Petition to Modify Decree," sworn to upon information and belief, alleging that plaintiff had refused to cooperate with him as required by the decree; and that he was in debt, without money, and unable to pay $60 per week child support. He prayed that the weekly allowance should be substantially reduced and for equitable relief.

On March 18, 1954, plaintiff filed an answer and cross-petition denying generally the allegations of defendant's petition and alleging that in December 1953 defendant had purchased a new Mercury automobile and had generally squandered his money and deliberately placed his property beyond the reach of plaintiff and the court; that he refused and neglected to pay child support without just cause; and that on February 6, 1954, after plaintiff's citation for contempt was filed, defendant paid $420 as child support, but was still in default for payments of March 4 and March 11, 1954. Plaintiff prayed that the allowance for child support

should be increased to $100 a week; that defendant should be required to furnish adequate security to insure future payments; and upon failure to do so, that a receiver should be appointed to take charge of all defendant's property and hold the same, together with the rents, issues, profits, and interest thereof for such security. Plaintiff also prayed for an accounting of delinquent payments, costs, an allowance of attorney's fee, and for equitable relief.

After hearings on March 31, July 20, and August 23, 1954, the trial court rendered a judgment, finding and adjudging that because of adverse economic conditions and change of circumstances, payments of child support required of defendant should be reduced to $50 per week until further order of court. A matter with relation to payment of personal taxes for 1953 was also disposed of, but it is not involved here. Plaintiff's motion for new trial was overruled, and she appealed, assigning that the trial court: (1) Erred in failing to allow plaintiff any attorney's fee; (2) erred in finding and adjudging that there had been any material change in defendant's financial situation and in reducing the allowance; (3) erred in denying plaintiff's request for appointment of a receiver; and (4) erred in failing to increase allowances for child support. Defendant filed no brief and made no appearance in this court. We sustain the first, second, and third assignments.

With regard to the first assignment, it appears that the trial court, in rendering the judgment, overlooked the taxation of any costs and the allowance of a fee for plaintiff's attorney as a part thereof. The costs in the district court should have been taxed to defendant, including therein a reasonable attorney's fee for services rendered by plaintiff's attorney in that court.

We turn to the primary question of whether or not the evidence justified a reduction in allowances for child support. Upon trial de novo, under elementary rules with relation thereto, we conclude that it did not.

In Schrader v. Schrader, 148 Neb. 162, 26 N. W. 2d 617, this court said: "In a divorce action the decree for child support is at all times subject to review in the light of changing conditions, regardless of the particular language of the award. Either party may, upon sufficient showing of changed conditions, apply to the district court for modification of the order made with respect to allowance for child support.

"An application for a change with respect to an allowance for support and maintenance of minors, as provided in a decree of divorce, made at any time after the decree has been entered must be founded upon new facts or circumstances which have arisen subsequent to the entry of the decree. In the absence of such facts and circumstances the matter will be deemed res adjudicata." See, also, Morris v. Morris, 137 Neb. 660, 290 N. W. 720.

The record discloses that at time of divorce defendant was farming 400 acres of land. Subsequently he rented 80 more acres, so that at the time of this hearing he was living 2½ miles north of Sutton and farming 480 acres. He then owned 80 acres of land, 16 cows and a calf, a pick-up truck, and valuable farm machinery, including tractors and a combine with which he did his own and outside work for hire. He also owned a new Mercury car which cost $2,900. On December 3, 1953, he had exchanged his 1951 Mercury car for it and paid $1,075 cash difference. His income tax return for 1953 disclosed that for such year his gross income was $14,528.59, with total expenses of $4,078.99. He reported a net farm income of $9,013.26, from which he deducted $1,521.06 alimony paid plaintiff, plus $750 attorney's fees paid by him. Among other things, he claimed 10 exemptions, one for himself and one for each of the nine children, upon the ground that he was responsible for more than one-half of their support. Thus, he eventually paid an income tax of only $15.10.

In 1954 he planted 140 acres of corn, 85 or 90 acres

of wheat, and some milo and popcorn. How much of the latter is not shown. Between January 1, 1954, and August 23, 1954, he sold 1,000 bushels of wheat stored on plaintiff's farm, receiving $2,100 therefor. He sold seed oats for $40, some corn for $337.50, and received $200 or more for combine work. He sold or obtained a loan on wheat for $2,328.90. He received a total of $1,201.75 for unexplained items, part of which was probably a loan. He also received $10 a month from a tenant, but the total so received is not clear. The total amount actually received by him during the first 8 months of 1954, accruing at a time when his corn crop, which was not as good as usual and had not yet been harvested, was $6,208.15 or more. During that period, child support payments accruing totaled $2,040, which left at least $4,168.15 for his own use.

As a matter of course, defendant had some legitimate debts and necessary expenses, but his explanation about what became of his money was vague and not convincing. For example, among other things, he testified that he spent $600 to repair his old Mercury car and the windmill. In that connection, it will be noted that his old car was traded off December 3, 1953. He claimed to have but little money in cash or in the bank, but he took a vacation trip to California, and has a lockbox with contents unexplained.

He complained that his two oldest sons, who were emancipated, did not live at home, and were employed in Hastings, did not help him. Of course, they were not required to do so. He complained also that the younger children refused to help him with the farm work, and that plaintiff urged them not to do so. Plaintiff denied that contention, which is supported by the fact that some of the children did assist him at times in spite of the fact that defendant called them abusive names, such as "damn dog," was unkind to them, and refused to compensate them for their work. The fact is that the oldest son at home was unable to work. He

was injured in an automobile accident on April 10, 1954, and as a result was confined in a hospital at Lincoln from that time until July 3, 1954, at great expense assumed by plaintiff. Since that time he has remained at home, paralyzed from his waist down, an invalid, cared for by plaintiff at great personal sacrifice, while defendant has not even attempted to see or visit with him.

This record clearly indicates that defendant's financial situation has not materially changed. His attitude, however, has changed. He is only 43 years old, and physically and financially able to pay $60 a week, but is unwilling to support his children. His position was " 'I don't have to kill myself.' She has help. When I was on the place we milked 12 to 14 cows and the children helped. She has got the farm. She has got the children. I got no help. She will have to take care of the children. I am done. I can't go any farther." Defendant evidently meant just that, because at the time this hearing was completed, he was delinquent 6 weekly payments for child support, amounting to $360.

In the meantime, plaintiff worked hard for long hours, living on 80 acres of land, with only 25 or 30 acres of corn, a garden, some cows and chickens, but little machinery, and no money. She had supplied herself and the children with vegetables, meat, chickens, milk, cottage cheese, and butter. Seven of the children were in school. Three attended high school and four attended grade school. They were driven back and forth in an old 1949 Ford car, owned, repaired, and supplied by plaintiff. She has sewed, fitted, and refitted the children with clothing. There is ample evidence that $50 a week, if paid, may furnish necessary food, but leave little if any money for clothing, medicine, and other expenses necessary for plaintiff and nine young children. Thus, $50 a week is patently insufficient, and plaintiff is in debt for necessaries required.

Plaintiff took the position that defendant could sup-

port the children if he would raise some hogs, milk some cows, and do more work, instead of staying in Sutton and hanging around the pool hall as he had been doing. In that regard, however, she said: "If he can't support the children, give me the machinery and the land and I will support them myself."

We conclude that defendant failed to establish any changed conditions which would justify any reduction in the allowance of $60 a week for child support, but under the circumstances, we also believe that it would be unwise at this time to require him to pay more than that amount each week.

The trial court evidently erred in refusing to require defendant to give sufficient security for payment of child support awarded by the decree, or, if such security was not furnished, to appoint a receiver as prayed by plaintiff, in conformity with section 42-323, R. R. S. 1943. In Ford v. Ford, 101 Neb. 648, 164 N. W. 577, we held: "Preliminary to making the order for the appointment of a receiver of the husband's property, provided for in section 1589, Rev. St. 1913, there must be an order, also provided for in said section, requiring the husband to give security for payments of alimony, according to the terms of the decree, and a failure or refusal upon his part to give such security." Section 1589, Rev. St. 1913, is now section 42-323, R. R. S. 1943.

We are convinced that defendant will not pay child support unless and until such orders are made, and that the children will thus continue to want the necessaries of life.

We conclude that the judgment of the trial court, reducing the child support to $50 per week, should be and hereby is reversed and the cause is remanded with directions to restore plaintiff's child support to $60 per week, as provided in the original decree; tax costs in the district court to defendant, including a reasonable attorney's fee for services rendered by plain-

tiff's attorney in that court; and require defendant to give sufficient security for payment of such child support, and upon neglect or refusal to furnish same, appoint a receiver to take charge of all defendant's real and personal property, as provided by section 42-323, R. R. S. 1943. All costs in this court are taxed to defendant, including $250 allowed as fees for services rendered by plaintiff's attorney in this court.

REVERSED AND REMANDED WITH DIRECTIONS.